John P. Kristensen (SBN 224132)
**KRISTENSEN LAW GROUP**
120 Santa Barbara Street, Suite C9
Santa Barbara, California 93101
Telephone: 805-837-2000
john@kristensen.law

Leigh S. Montgomery*
Texas Bar No. 24052214
lmontgomery@eksm.com
**EKSM, LLP**
1105 Milford Street
Houston, Texas 77006
Phone: (888) 350-3931

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS**
(* denotes *pro hac vice* forthcoming)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

KENDRA BAGE, on behalf of herself individually and all others similarly situated,

       *Plaintiff,*

vs.

CALIFORNIA PHYSICIANS' SERVICE dba BLUE SHIELD OF CALIFORNIA

       *Defendant.*

) Case No. 4:25-cv-3304
)
) **CLASS ACTION COMPLAINT FOR**
) **DAMAGES:**
)
) 1. **VIOLATION OF THE**
) **ELECTRONIC PRIVACY**
) **ACT, 18**
) **U.S.C. § 2510,** *et seq.*
) 2. **VIOLATIONS OF CAL. PENAL**
) **CODE § 631,** *et seq.*;
) 3. **INVASION OF PRIVACY**
) **UNDER CAL.**
) **CONSTITUTION;**
) 4. **VIOLATIONS OF CAL.**
) **PENAL CODE § 502;**
) 5. **VIOLATIONS OF CAL.**
) **PENAL CODE § 638.51(a);**
) 6. **VIOLATION OF 18 U.S.C. §**
) **1030;**



1  )  7.  **VIOLATIONS OF 18**
2  )      **U.S.C. § 2701;**
3  )  8.  **NEGLIGENCE;**
4  )  9.  **VIOLATIONS OF CAL. CIV.**
        **CODE § 1798.80**
5  )  10. **VIOLATIONS OF CAL. CIV.**
        **CODE § 56,** *et seq.***;**
6  )
7  )
8  )
9  )
10 )

_____     **DEMAND FOR JURY TRIAL**

Plaintiff Kendra Bage ("Plaintiff") brings this Class Action Complaint ("Complaint") on behalf of herself and all others similarly situated ("Class Members") against California Physicians' Service dba Blue Shield of California ("BSCA" or "Defendant"), on behalf of herself individually and on behalf of all others similarly situated ("Class Members") which: (1) is one of the largest health care insurers in California; (2) partners with doctors and practice groups to provide medical coverage including HMOs, PPOs, Dental care, and Vision Care; and (3) operates, controls, and manages over 380 hospitals state wide, working with over 75,000 physicians. Defendant owns and controls blueshieldca.com and related webpages ("Website"), and it also owns and controls a mobile app ("App") (collectively, "Web Properties"). The allegations contained herein, which are based on Plaintiff's knowledge of facts pertaining to herself and her own actions and counsels' investigations, and upon information and belief as to all other matters, are as follows:

## **NATURE OF THE ACTION**

1.      Plaintiff brings this action against Defendant for disclosing confidential personally identifiable information ("PII") and protected health information ("PHI") (collectively referred to as "Private Information") to Google, via Google Analytics in

1   violation of various common and statutory data privacy laws.

2       2.      Defendant is a health plan which maintains websites where its subscribers
3   can access information about their plans, services, claims, and other confidential
4   information.

5       3.      When engaging with Defendant's online resources, safeguarding
6   personal health information is paramount. Users anticipate that their data will remain
7   confidential and not be disclosed to third parties without explicit consent. This
8   expectation is particularly significant when accessing sensitive health topics.
9   Interactions on these subjects may involve deeply personal details, including medical
10  histories and personal experiences, as well as searches involving sensitive medical
11  subjects. The emotionally sensitive and potentially stigmatizing nature of this
12  information underscores the critical importance of robust data protection measures to
13  maintain user trust and ensure privacy.

14      4.      Moreover, information concerning an individual's healthcare, is
15  protected by state and federal law.

16      5.      Despite these protections, and unbeknownst to Plaintiff and Class
17  Members, Defendant shared its subscribers' Private Information with Google
18  Analytics that allowed certain member data to be shared with Google's advertising
19  product, Google Ads. ("Data Breach") Google may have used this data to conduct
20  focused ad campaigns back to those individual members. This took place between
21  April 2021 and January 2024.

22      6.      The information that Defendant shared with Google includes insurance
23  plan name, type and group number; city; zip code; gender; family size; Blue Shield
24  assigned identifiers for members' online accounts; medical claim service date and
25  service provider, patient name, and patient financial responsibility; and "Find a
26  Doctor" search criteria and results (location, plan name and type, provider name and
27  type).

28      7.      The Private Information that Defendant disclosed to Google is valuable

to internet marketing companies like Google as they receive, view, analyze, and aggregate the information to build consumer profiles to assist advertisers in targeting desired demographics.

8.    While Defendant claimed that it discovered this on February 11, 2025, it did not notify its subscribers until April 7, 2025.

9.    Plaintiff brings this action for legal and equitable remedies resulting from these illegal actions.

## PARTIES

10.    Plaintiff Kendra Bage is a Citizen of Salinas, California. Plaintiff is a Blue Shield Subscriber.

11.    Defendant is a California nonprofit mutual benefit corporation formed in California with its principal place of business located at 601 12th Street, Oakland, California 94607.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

12.    Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 because this action arises out of Defendant's violations of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §2510 et seq.

13.    This Court also has federal subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because this is a proposed class action in which there are at least 100 Class members, the amount in controversy exceeds $5,000,000, and Defendant and at least one class member are diverse.

14.    Plaintiff is requesting statutory damages of $10,000 per violation of the ECPA, which when aggregated among a proposed class number in the thousands, far exceeds the $5,000,000 threshold for federal court jurisdiction under CAFA.

15.    Therefore, this Court has federal subject matter jurisdiction.

16.    This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in California and because it is registered to do business in California. Moreover, Defendant is headquartered in California, and maintains a

substantial portion of its business in California. Furthermore, a substantial part of the events and conduct giving rise to Plaintiff's claims occurred in California.

17.    Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) the conduct complained of herein occurred within this judicial district; and (ii) Defendant conducted business within this judicial district at all times relevant.

18.    Since the acts or omissions which give rise to Plaintiff's claims occurred in the County of Alameda, Pursuant to Local Rule 3.2(c), this action must be assigned to the Oakland division of the Northern District Court.

## FACTUAL ALLEGATIONS

**COMMON ALLEGATIONS**

19.    Defendant maintains websites at which its subscribers can look up information about their plans, claims, services and find doctors, among other things.

20.    When Plaintiff and Class Members viewed pages on Defendant's websites, including those containing private health information, Defendant transmitted this information to Google through the Google Analytics ("Google" or "GA").

21.    Google may have used this data to conduct focused ad campaigns back to those individual members.

22.    Defendant's transmission of information to Google included Insurance plan name, type and group number; city; zip code; gender; family size; Blue Shield assigned identifiers for members' online accounts, medical claim service date and service provider, patient name, and patient financial responsibility; and "Find a Doctor" search criteria and results (location, plan name and type, provider name and type).

23.    GA is an advertising tool that allows website owners to track visitor actions on their websites for purposes of sending the corresponding information to Google; websites use GA in hopes of better targeting their products and services to interested consumers. Thus, a business such as Defendant chooses to install the Pixel on its website in order to increase its profits.

24.     Defendant knew that by installing GA on its websites, the GA would send Google information about its subscribers.

25.     Google benefits from websites like Defendant's installing its GA. When GA is installed on a business's website, the business has a greater incentive to advertise through Google. In addition, even if the business does not advertise with Google, the Pixel assists Google in building more fulsome profiles, which in turn allows Google to profit from providing more targeted ads. GA is installed on a variety of websites and, accordingly, provides Google with information about individuals' preferences, other distinguishing traits, and web browsing activities outside of Google-owned platforms.

26.     Using GA likewise benefits Defendant's business by improving its ability to promote its content and services, thereby increasing its profits.

27.     Defendant violated and invaded the privacy rights of consumers with its practice of sending Private Information to Google. Plaintiff and Class Members did not know of or consent to Defendant's disclosure of their Private Information to Google.

28.     At no point was Plaintiff or any other subscriber asked for consent to such sharing. Hence, no individual consented to Defendant's offending practice of sharing Private Information with third parties.

29.     Defendant shared with Google the Private Information of Plaintiff and Class Members, including their personal health information, which they reasonably expected would be kept private.

30.     Plaintiff and Class Members trusted that Defendant's privacy practices comported with their privacy preferences.

**How A Medical Website Like Defendant's Transmits Confidential Medical Information Through GET And POST Requests**

31.     A GET request is an HTTP method used by a web browser or application to retrieve specific information from a server. It is commonly employed when a

consumer enters a search term, navigates to a particular page, or interacts with a website's interface.

32.    The purpose of a GET request is to send a request to the server, which then returns the requested resource, such as a webpage or data. Importantly, the data sent via a GET request is appended to the URL in plain text, making it inherently unencrypted and visible in the browser's address bar.

33.    Because GET requests transmit data in the open through the URL, any private information included, such as search terms, can be exposed. For example, when a consumer searches for medical symptoms or conditions on a website, those search terms can become part of the visible URL.

34.    This means that any third parties monitoring the connection, including advertisers or analytics companies, can potentially intercept and record this information. The inclusion of such sensitive data in GET requests creates a significant privacy risk, particularly when dealing with medical or other confidential information.

35.    Additionally, GET requests can simultaneously transmit data to third-party websites without the consumer's knowledge or consent. Through the use of tracking scripts and embedded links, a website can forward the URL, including the GET request data, to third-party entities such as advertising networks or analytics providers.

36.    These third parties, like Google, can then collect, store, and process this sensitive information for their own purposes, effectively spying on the consumer's browsing activity.

37.    A POST request, by contrast, is an HTTP method used to send larger amounts of data from the consumer to a server, often as part of form submissions or account interactions.

38.    POST requests are designed to transmit data in the body of the HTTP request rather than in the URL, which can offer better protection for sensitive information.

39.    However, POST requests are not inherently encrypted, meaning that without the use of secure protocols such as HTTPS, the data transmitted via POST requests remains vulnerable to interception by third parties.

40.    In the context of websites that deal with sensitive consumer information, such as healthcare or financial platforms, POST requests can carry private data including names, email addresses, medical history, or even insurance information. This information, if unencrypted, can be intercepted and accessed by unauthorized parties, leading to breaches of confidentiality and consumer trust.

41.    Furthermore, POST requests can also be configured to forward this sensitive data to third-party entities, often without the consumer's awareness or informed consent.

42.    The unauthorized use of POST requests to transmit private medical data to third parties is particularly egregious in the context of consumer privacy rights.

43.    When a consumer enters or visits sensitive health information on a website, they reasonably expect that this data will be handled confidentially and used only for its intended purpose. However, many websites utilize embedded tracking codes that surreptitiously forward this information simultaneously, instantaneously, and in real-time to third-party analytics or advertising companies.

44.    These practices expose consumers to potential harm, including discrimination, identity theft, or unauthorized profiling.

45.    Both GET and POST requests, when misused, create a scenario where the consumer's private data is transmitted in the open and shared without consent.

46.    Websites that fail to implement adequate safeguards or notify consumers about these practices undermine consumer trust and violate their privacy rights.

47.    The unencrypted transmission of search terms, medical data, or other personal information through these HTTP methods constitutes a significant breach of confidentiality, especially when such data is shared with or accessible by third-party entities.

48.   In the digital age, where consumers increasingly rely on websites to access critical information and services, the integrity and confidentiality of their interactions must be protected.

49.   The misuse of GET and POST requests to disclose or transmit private consumer data, particularly sensitive medical information, without explicit consent or transparency, violates fundamental principles of data privacy and consumer protection.

50.   Such actions represent a grave breach of trust and privacy, as the transmitted data included sensitive and personal medical information that should have been safeguarded by Defendant.

51.   Defendant facilitated the unauthorized disclosure of individually identifiable medical information, causing harm to Plaintiff and other Class Members.

**Defendant Disclosed Plaintiff's and Class Members' PHI**

52.   Plaintiff and other Class Members access Defendant's websites to search for information about their plans and look for doctors.

53.   Unbeknownst to Plaintiff and Class Members, Google was tracking their activity the moment they entered the Defendant's websites.

54.   Defendant embedded the Pixel on its websites, which allowed Google to intercept and record "click" events when Plaintiff and Class Members clicked through to various pages. Click events detail information about which page on the websites the person was viewing as well as the selections and search terms they were using.

55.   Google intercepts information including the specific doctor they were searching for or other health information they were viewing along with a whole host of other personally, identifying information, transmitted, instantaneously to Google, in order to uniquely identify the user and the device accessing Defendant's websites.

56.   By installing the Pixel on its websites, Defendant assisted Google with intercepting visitors' confidential information related to their medical needs in order to monetize that data for targeted advertising and other purposes.

57.    These interceptions also included a variety of personally identifying information which Google then utilized for targeted advertising.

58.    Google used the sensitive medical information it intercepted in real time and while in transit from Defendant's websites into its marketing tools to fuel its targeted advertising service.

59.    Plaintiff never consented, agreed, authorized, or otherwise permitted Google to intercept her confidential health information.

60.    Plaintiff never consented, agreed, authorized, or otherwise permitted Defendant to share her confidential health information with Google.

61.    By law, Plaintiff is entitled to privacy in her protected health information and confidential communications.

62.    Defendant deprived Plaintiff of her privacy rights when it implemented a system that surreptitiously tracked and recorded Plaintiff's and other online consumers' confidential communications, personally identifiable information, and protected health information.

**Defendant Violated HIPAA and Industry Standards**

63.    The federal government has issued guidance warning that tracking codes may violate federal privacy law when installed on healthcare websites such as Defendant's.

64.    The statement titled, USE OF ONLINE TRACKING TECHNOLOGIES BY HIPAA COVERED ENTITIES AND BUSINESS ASSOCIATES (the "Bulletin"), was issued by the Department of Health and Human Services' Office for Civil Rights ("OCR") in December 2022[1]

65.    Healthcare organizations regulated under the Health Insurance Portability and Accountability Act (HIPAA) may use third-party tracking tools, such as the

---

[1] https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last accessed April 11, 2025).

Google Analytics, in a limited way, to perform analysis on data key to operations. They are not permitted, however, to use these tools in a way that may expose patients' PHI to these vendors. The Bulletin explains:

> Regulated entities [those to which HIPAA applies] are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules. ***For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures***.

66.     The bulletin then further discusses the types of harm that disclosure may cause to the patient:

> An impermissible disclosure of an individual's PHI not only violates the Privacy Rule but also may result in a wide range of additional harms to the individual or others. For example, an impermissible disclosure of PHI may result in identity theft, financial loss, ***discrimination, stigma, mental anguish, or other serious negative consequences to the reputation, health, or physical safety of the individual or to others identified in the individual's PHI***. Such disclosures can reveal incredibly sensitive information about an individual, ***including diagnoses, frequency of visits to a therapist or other health care professionals, and where an individual seeks medical treatment***.
>
> While it has always been true that regulated entities may not impermissibly disclose PHI to tracking technology vendors, ***because of the proliferation of tracking technologies collecting sensitive information, now more than ever, it is critical for regulated entities to ensure that they disclose PHI only as expressly permitted or required by the HIPAA Privacy Rule.***
>
> *Id*. (footnotes omitted; bold italics added).

67.     Plaintiff and Class Members face the very same kinds of risks that the government describes concerns about in this bulletin.

68.     Defendant disclosed the sensitive information that Plaintiff and Class Members visited on its websites and then immediately broadcast those in real time and simultaneously to Google.

69.    This information is, as described by the OCR in its bulletin, "highly sensitive."

70.    The Bulletin goes on to make clear how broad the government's view of protected information is. It explains:

This information might include an individual's medical record  number  home or email address,   or     dates  of appointments, as well as an individual's IP address or geographic location, medical device IDs, or **any unique identifying code.**

Id. (footnotes omitted; bold italics added).

71.    Crucially, that Bulletin continues:

***All such [individually identifiable health information ("IIHI")] collected on a regulated entity's website or mobile app generally is PHI, even if the individual does not have an existing relationship with the regulated entity and even if the IIHI, such as IP address or geographic location, does not include specific treatment or billing information like dates and types of health care services. This is because, when a regulated entity collects the individual's IIHI through its website or mobile app, the information connects the individual to the regulated entity (i.e., it is indicative that the individual has received or will receive health care services or benefits from the covered entity), and thus relates to the individual's past, present, or future health or health care or payment for care.***

*Id*. (footnotes omitted; bold italics added).

72.    Then, in July 2022, the Federal Trade Commission ("FTC") and the Department of Health and Human Services ("HHS") issued a joint press release warning regulated entities about the privacy and security risks arising from the use of online tracking technologies:

The Federal Trade Commission and the U.S. Department of Health and Human Services' Office for Civil Rights (OCR) are cautioning hospitals and telehealth providers [regulated entities] about the privacy and security risks related to the use of online tracking technologies integrated into their websites or mobile apps that may be

impermissibly disclosing consumers' sensitive personal health data to third parties.

"When consumers visit a hospital's [regulated entity's] website or seek telehealth services, they should not have to worry that their most private and sensitive health information may be disclosed to advertisers and other unnamed, hidden third parties," said Samuel Levine, Director of the FTC's Bureau of Consumer Protection. "The FTC is again serving notice that companies need to exercise extreme caution when using online tracking technologies and that we will continue doing everything in our powers to protect consumers' health information from potential misuse and exploitation."

"Although online tracking technologies can be used for beneficial purposes, patients and others should not have to sacrifice the privacy of their health information when using a hospital's [regulated entity's] website," said Melanie Fontes Rainer, OCR Director. "OCR continues to be concerned about impermissible disclosures of health information to third parties and will use all of its resources to address this issue."

The two agencies sent the joint letter to approximately 130 [regulated entities] hospital systems and telehealth providers to alert them about the risks and concerns about the use of technologies, such as the Meta/Facebook pixel and Google Analytics, that can track a user's online activities. These tracking technologies gather identifiable information about users, usually without their knowledge and in ways that are hard for users to avoid, as users interact with a website or mobile app.

In their letter, both agencies reiterated the risks posed by the unauthorized disclosure of an individual's personal health information to third parties. For example, the disclosure of such information could reveal sensitive information including health conditions, diagnoses, medications, medical treatments, frequency of visits to health care professionals, and where an individual seeks medical treatment.

. . . Through its recent enforcement actions against BetterHelp, GoodRx and Premom, as well as recent guidance from the FTC's Office of Technology, the FTC has put companies on notice that they must monitor the flow of health information to third parties that use tracking technologies integrated into websites and apps. The unauthorized disclosure of such information may violate the FTC Act and could constitute a breach of security under the FTC's Health Breach Notification Rule . . .[2]

73.     Defendant's conduct with respect to its website data sharing practices is directly contrary to clear pronouncements by the FTC and HHS.

**Plaintiff's Experience with Defendant's Web Properties**

74.     On April 9, 2025, Plaintiff received a Notice of Data Breach ("Notice") from Defendant.[3]

75.     The email stated:

---

[2]     https://www.ftc.gov/news-events/news/press-releases/2023/07/ftc-hhs-warn-hospital-systems-telehealth-providers-about-privacy-security-risks-online-tracking  (last accessed April 11, 2025)
[3] See Attached, Exhibit A Notice sent to Plaintiff.

We are writing to inform you about a potential data breach. It is reasonably believed that certain elements of your protected health information may have been accessed, acquired, used, or disclosed to a third party. Due to the complexity and scope, we are unable to confirm whether your specific information was affected but are sending this notice out of an abundance of caution. Blue Shield assures you that we take this matter very seriously. We have taken measures to safeguard against similar future disclosures.

**What Happened**

Like other health plans, Blue Shield historically used the third-party vendor service, Google Analytics, to internally track website usage of members who entered certain Blue Shield sites. We were doing this to improve the services we provide to our members.

On February 11, 2025, Blue Shield discovered that, between April 2021 and January 2024, Google Analytics was configured in a way that allowed certain member data to be shared with Google's advertising product, Google Ads, that likely included protected health information. Google may have used this data to conduct focused ad campaigns targeted back to you. We want to reassure you no bad actor was involved, and, to our knowledge, Google has not used your information for any purpose other than these ads or shared your protected information with anyone.

Blue Shield severed the connection between Google Analytics and Google Ads on its websites in January 2024. We have no reason to believe that any member data has been shared from Blue Shield's websites with Google after the connection was severed. Upon discovering the issue, Blue Shield immediately initiated a review of its

websites and security protocols to ensure that no other analytics tracking software is impermissibly sharing members' protected health information.

**What Information Was Involved**

The information that may have been impacted includes the following: Insurance plan name, type and group number; city; zip code; gender; family size; Blue Shield assigned identifiers for your online account; medical claim service date and service provider, patient name, and patient financial responsibility; and "Find a Doctor" search criteria and results (location, plan name and type, provider name and type).

76.    Plaintiff has been insured by BSCA and used BSCA's services for several years.

77.    As a member of BSCA's insurance plans, and in order to obtain medical treatment and insurance services, Plaintiff accessed and used BSCA's Web Properties on her phone and computer.

78.    Plaintiff communicated her Private Information to BSCA when she used the Web Properties, and she specifically recalls using the "nurse hotline" as well as paying her bills/premiums and reviewing her PHI via the portal.

79.    Plaintiff reasonably expected that—as a health plan member seeking medical treatment and services—her communications were confidential and would not be received by Google or other unknown third-parties, or used for marketing purposes, without her express written consent. That was not the case.

80.    Plaintiff has been insured by BSCA and used BSCA's services for several years.

81.    In addition, Plaintiff is unsure how much of her more extensive medical information, including photographs, her doctor has shared via BSCA's Web Properties in order to collect payment. As a result, Plaintiff has fears her complete medical file

may have been exposed and/or received by Google or other unknown third-parties without her permission.

## TOLLING

82.    Any applicable statute of limitations has been tolled by the "delayed discovery" rule. Plaintiff did not know (and had no way of knowing) that her Private Information was intercepted and unlawfully disclosed to Google or any other third-parties in the manner described herein because: (1) Defendant kept this information secret, and (2) the Tracking Tools were invisible when Plaintiff and Class Members used the Web Properties.

## CLASS ACTION ALLEGATIONS

83.    Class Definition: Plaintiff brings this action on behalf of herself and other similarly situated individuals defined as follows:

> **Nationwide Class:** United States citizens who, during the class period, used Defendant's Web Properties and had their PII or PHI disclosed to Google or other third parties as a result of using the Web Properties.

> **California Subclass:** Citizen of California who, during the class period, used Defendant's Web Properties and had their PII or PHI disclosed to Google or other third parties as a result of using the Web Properties.

84.    Plaintiff reserves the right to modify the class definitions or add sub-classes as needed prior to filing a motion for class certification.

85.    The "Class Period" is the period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues, and ending on the date of entry of judgement or preliminary approval of a settlement.

86.    Excluded from the Class are Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any

officer director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

87. **Numerosity/Ascertainability.** Members of the Class are so numerous that joinder of all members would be unfeasible and not practicable. The exact number of Class Members is unknown to Plaintiff currently. However, it is estimated that there are thousands of individuals in the Class. The identity of such membership is readily ascertainable from Defendant's records, including records of all people to whom Defendant sent the Notice of Data Breach.

88. **Typicality**. Plaintiff's claims are typical of the claims of the Class because Plaintiff used Defendant's Web Properties and had her PII and PHI disclosed to third parties such as Google without her express written authorization or knowledge. Plaintiff's claims are based on the same legal theories as the claims of other Class Members.

89. **Adequacy**. Plaintiff is fully prepared to take all necessary steps to represent fairly and adequately the interests of the Class Members. Plaintiff's interests coincide with, and are not antagonistic to, those of the Class Members. Plaintiff is represented by attorneys with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically. Plaintiff's attorneys are committed to vigorously prosecuting this action on behalf of the Class Members.

90. **Common Questions of Law and Fact Predominate/Well Defined Community of Interest.** Questions of law and fact common to the Class Members predominate over questions that may affect only individual Class Members because Defendant has acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct. The following questions of law and fact are common to the Class:

a.  Whether BSCA intentionally tapped the lines of internet communication between patients and their medical providers;

b.  Whether the Web Properties surreptitiously track PII, PHI, and related communications and simultaneously disclose(d) that information to Google and/or other third parties;

c.  Whether Google is a third-party eavesdropper;

d.  Whether BSCA's disclosures of PII, PHI, and related communications constitute an affirmative act of communication;

e.  Whether BSCA's conduct, which allowed third parties to view Plaintiff's and Class Members' PII and PHI, resulted in a breach of confidentiality;

f.  Whether BSCA's conduct, which allowed third parties to view Plaintiff's and Class Members' PII and PHI, resulted in a breach of confidence;

g.  Whether BSCA violated Plaintiff's and Class Members' privacy rights by using Tracking Technologies to communicate patients' Private Information to third parties;

h.  Whether Plaintiff and Class Members are entitled to damages under CIPA, the CMIA, or any other relevant statute;

i.  Whether BSCA's actions violated the Unfair Competition Law;

j.  Whether BSCA's actions violated Plaintiff's and Class Members' privacy rights as provided by the California Constitution;

k.  Whether BSCA violates HIPAA by requiring patients to affirmatively opt-out of having their information shared for marketing purposes;

91.  **Superiority**. Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons a method for obtaining

redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action. Plaintiff is unaware of any special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

I.    **CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Violation of the Electronic Communications Privacy Act,**

**18 U.S.C. § 2511(1)**

92.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the Nationwide Class.

93.    The Electronic Communications Privacy Act ("ECPA") prohibits the intentional interception of the content of any electronic communication. 18 U.S.C. §2511. The ECPA protects both sending and the receipt of communications. 18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119. The transmission of Plaintiff's private and confidential information to Defendant's websites qualify as a "communication" under the ECPA's definition of 18 U.S.C. § 2510(12).

94.    The transmission of the private and confidential information between Plaintiff and Class Members and Defendant's websites with which they chose to exchange communications are "transfer[s] of signs, signals, writing,…data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo optical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(12).

95.    The ECPA defines "contents," when used with respect to electronic communications, to "include[] any information concerning the substance, purport, or

meaning of that communication." 18 U.S.C. 18 U.S.C. § 2510(8). The ECPA defines an interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

96.    The ECPA defines "electronic, mechanical, or other device," as "any device…which can be used to intercept a[n]…electronic communication[.]" 18 U.S.C.§ 2510(5).

97.    The following instruments constitute "devices" within the meaning of the ECPA:

    a.  The computer codes and programs Google used to track Plaintiff's and Class Members' communications while they were navigating Defendant's websites;

    b.  Plaintiff's and Class Members' browsers;

    c.  Plaintiff's and Class Members' mobile devices;

    d.  Defendant's and Google's web and ad servers;

    e.  The plans Defendant and Google carried out to effectuate the tracking and interception of Plaintiff's and Class Members' communications while they were using a web browser to navigate Defendant's websites.

98.    Plaintiff and Class Members' interactions with Defendant's websites are electronic communications under the ECPA.

99.    By utilizing and embedding the Google tracking software on its websites, Defendant intentionally intercepted in real time and while in transit, endeavored to intercept, and/or procured another person to intercept, the electronic communications of Plaintiff and Class Members in violation of 18 U.S.C. § 2511(1)(a).

100.    Specifically, Defendant intercepted in real time and while in transit Plaintiff's and Class Members' electronic communications through Google's software implementations on its websites, which tracked, stored and unlawfully disclosed Plaintiff's and Class Members' private and confidential information to third parties,

such as Google.

101.    Defendant intercepted in real time and while in transit or assisted in the interception of communications that include, but are not necessarily limited to, communications to/from Plaintiff and Class Members regarding private and confidential information. This confidential information was then monetized for targeted advertising purposes.

102.    By intentionally disclosing or endeavoring to disclose Plaintiff's and Class Members' electronic communications to Google, their affiliates and other third parties, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(c).

103.    By intentionally using, or endeavoring to use, the contents of Plaintiff's and Class Members' electronic communications, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. §2511(1)(d).

104.    Defendant intentionally intercepted in real time and while in transit or intentionally assisted in the interception of the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a criminal or tortious act in violation of the Constitution or laws of the United States or of any state, namely, invasion of privacy, among others.

105.    The party exception in 18 U.S.C. § 2511(2)(d) does not permit a party that intercepts or causes interception to escape liability if the communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State. Here, as alleged above, Defendant violated a provision of the Health Insurance Portability and Accountability Act, specifically 42 U.S.C. § 1320d-6(a)(3). This provision imposes a criminal penalty for knowingly disclosing individually identifiable health information ("IIHI") to a third

party. HIPAA defines IIHI as: any information, including demographic information collected from an individual, that—(A) is created or received by a health care provider …(B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and (i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.42 .S.C. § 1320d-6.

106.    Plaintiff's information that Defendant assisted Google in intercepting qualifies as IIHI, and Defendant violated Plaintiff's and Class Members' expectations of privacy. Such conduct constitutes tortious and/or criminal conduct through a violation of 42 U.S.C. §1320d-6. Defendant used the wire or electronic communications to increase its profit margins. Defendant specifically used Google's tracking software to track and utilize Plaintiff's and Class Members' private and confidential information for financial gain.

107.    Defendant was not acting under the color of law to intercept Plaintiff's and Class Members' wire or electronic communications.

108.    Plaintiff and Class Members did not authorize Defendant to acquire the content of their communications for purposes of invading Plaintiff's and Class Members' privacy through Google.

109.    Plaintiff and Class Members had a reasonable expectation that Defendant would not intercept or assist in the interception of their private and confidential information without their knowledge or consent.

110.    The foregoing acts and omission therefore constitute numerous violations of 18 U.S.C. § 2511(1), et seq.

111.    As a result of each and every violation thereof, on behalf of herself and the Class, Plaintiff seeks statutory damages of $10,000 or $100 per day for each violation of 18 U.S.C. § 2510, et seq. under 18 U.S.C. § 2520.

///

## SECOND CAUSE OF ACTION

### Violation of the California Invasion of Privacy Act, Cal. Penal Code § 631

112.   Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the California Subclass.

113.   The California Invasion of Privacy Act ("CIPA") is codified at California Penal Code sections 630 to 638. CIPA begins with its statement of purpose– namely, that the purpose of CIPA is to "protect the right of privacy of the people of [California] from the threat posed by "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications " Cal. Penal Code § 630.

114.   A person violates California Penal Code § 631(a), if: by means of any machine, instrument, or contrivance, or in any other manner, [s/he] intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or [s/he] willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or [s/he] uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained . Cal. Penal Code § 631(a).

115.   Further, a person violates Section 631(a) if s/he "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned" in the preceding paragraph. Id.

116.   To avoid liability under Section 631(a), a defendant must show it had the consent of all parties to a communication.

117. At all relevant times, Defendant aided, agreed with, and conspired with Google to track and intercept Plaintiff's and Class Members' internet communications while accessing Defendant's websites. These communications were intercepted in real time and while in transit without the authorization and consent of Plaintiff and Class Members.

118. Defendant, when aiding and assisting Google's wiretapping and eavesdropping, intended to help them learn some meaning of the content in the URLs, the specific search terms typed in by the website's visitor, and the content the visitor requested and viewed.

119. The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, the Google tracking programs falls under the broad catch-all category of "any other manner":

    a. The computer codes and programs Google used to track Plaintiff's and Class Members' communications while they were navigating Defendant's websites;

    b. Plaintiff's and Class Members' browsers;

    c. Plaintiff's and Class Members' computing and mobile devices;

    d. Google's web and ad servers;

    e. The web and ad-servers from which Google tracked and intercepted in real time and while in transit Plaintiff's and Class Members' communications while they were using a web browser to access or navigate Defendant's websites;

    f. The computer codes and programs used by Google to effectuate its tracking and interception of Plaintiff's and Class Members' communications while they were using a browser to visit Defendant's websites; and

    g. The plans Google carried out to effectuate its tracking and interception of Plaintiff's and Class Members' communications while they were using a

web browser or mobile device to visit Defendant's websites.

120.   The information that Defendant transmitted using Google constituted sensitive and confidential personally identifiable information.

121.   As demonstrated hereinabove, Defendant violated CIPA by aiding and permitting third parties to receive its website visitors' sensitive and confidential online communications through its websites without their consent.

122.   As a result of the above violations, Defendant is liable to Plaintiff and other Class Members in the amount of, the greater of, $5,000 dollars per violation or three times the amount of actual damages. Additionally, California Penal Code section 637.2 specifically states that "[it] is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

123.   Under the statute, Defendant is also liable for reasonable attorney's fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by Defendant in the future.

## THIRD CAUSE OF ACTION

### Invasion of Privacy Under California's Constitution

124.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the proposed California Subclass.

125.   Plaintiff and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential online communications and protected health information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to wiretaps without Plaintiff's and Class Members' knowledge or consent.

126.   At all relevant times, by using Google to record and communicate its websites' visitors' sensitive and confidential online medical communications,

Defendant intentionally invaded Plaintiff's and Class Members' privacy rights under the California Constitution.

127.   Plaintiff and Class Members had a reasonable expectation that their sensitive and confidential online communications, identities, health information, and other data would remain confidential, and that Defendant would not install wiretaps on its websites.

128.   Plaintiff and Class Members did not authorize Defendant to record and transmit Plaintiff's and Class Members' private medical communications alongside their personally identifiable health information to Google.

129.   This invasion of privacy was serious in nature, scope, and impact because it related to individuals' private medical communications. Moreover, it constituted an egregious breach of the societal norms underlying the privacy right.

130.   Accordingly, Plaintiff and Class Members seek all relief available for invasion of privacy claims under California's Constitution.

## FOURTH CAUSE OF ACTION

**Violation of the California Computer Data Access and Fraud Act**

**Cal. Penal Code. § 502**

131.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the proposed California Subclass.

132.   The California legislature enacted the CDAFA with the intent of "expand[ing] the degree of protection afforded to individuals . . . from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a). The enactment of the CDAFA was motivated by the finding that "the proliferation of computer technology has resulted in a concomitant proliferation of . . . unauthorized access to computers, computer systems, and computer data." Id.

133.   Plaintiff's and Class Members' mobile computing devices and personal

computers constitute "computers" within the scope of the CDAFA.

134.    Defendant violated the CDAFA Section 502(c)(1), which makes it unlawful to "knowingly access[] and without permission . . . use[] any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data;"

135.    Defendant violated the CDAFA Section 502(c)(2), which makes it unlawful to "knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network;"

136.    Defendant violated the CDAFA Section 502(c)(7), which makes it unlawful to "knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network."

137.    Defendant knowingly accessed Plaintiff's and Class Members' computers without their permission by including within the third-party Google described herein, which intercepts and transmits data, communications, and personal information concerning Plaintiff and Class Members.

138.    Defendant used data, communications, and personal information that it intercepted in real time and while in transit and took from Plaintiff's and Class Members' computers to wrongfully and unjustly enrich itself at the expense of Plaintiff and Class Members.

139.    Defendant took, copied, intercepted in real time and while in transit, and made use of data, communications, and personal information from Plaintiff's and Class Members' computers.

140.    Defendant knowingly and without Plaintiff's and Class Members' permission accessed or caused to be accessed their computers, by installing its Google tracking software without Plaintiff's and Class Members' informed consent, a software

that intercepts and/or takes data, communications, and personal information concerning Plaintiff and Class Members.

141.   Plaintiff and Class Members are residents of California and used their computers in California at all relevant times in which Defendant made such unauthorized access.

142.   Defendant accessed or caused to be accessed Plaintiff's and Class Members' data, communications, and personal information from California.

143.   Defendant uses data servers that are in part located in California and allow Defendant to access and process the data, communications and personal information concerning Plaintiff and Class Members.

144.   Defendant was unjustly enriched by intercepting, acquiring, taking, or using Plaintiff's and Class Members' data, communications, and personal information without their permission, and using it for Defendant's own financial benefit. Defendant has been unjustly enriched in an amount to be determined at trial.

145.   As a direct and proximate result of Defendant's violations of the CDAFA, Plaintiff and Class Members suffered damages.

146.   Pursuant to CDAFA Section 502(e)(1), Plaintiff and Class Members seek compensatory, injunctive and equitable relief in an amount to be determined at trial.

147.   Pursuant to CDAFA Section 502(e)(2), Plaintiff and Class Members seek an award of reasonable attorneys' fees and costs.

148.   Pursuant to CDAFA Section 502(e)(4), Plaintiff and Class Members seek punitive or exemplary damages for Defendant's willful violations of the CDAFA.

## FIFTH CAUSE OF ACTION

### Use of a Pen Register or Trap and Trace Device

### Cal. Penal Code § 638.51

149.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the proposed California Subclass.

150.   California Penal Code Section 638.50(b) defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication."

151.   California Penal Code Section 638.51 prohibits any person from using a pen register without a court order.

152.   Defendant's third-party software from Google installed on Plaintiff's other Class Members' devices by its websites constitutes a "pen register" because it is a device or process that records addressing or signaling information—Plaintiff's and Class Members' location data and other sensitive personal information—from the electronic communications transmitted by their computers.

153.   Defendant was not authorized by any court order to use a pen register to track Plaintiff's and Class Members' location data and personal information.

154.   As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members suffered losses and were damaged in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION

### Violation of the Computer Fraud and Abuse Act 18 U.S.C. § 1030

155.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the proposed Nationwide Class.

156.   Plaintiff alleges that Defendant violated the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030(a)(2)(C), by intentionally accessing Plaintiff's and Class Members' devices without authorization, or by exceeding authorized access, to obtain information from protected computers used in interstate or foreign commerce.

157.   Plaintiff's device qualifies as "protected computers" under the CFAA, as it is connected to the internet and used in interstate communications.

158.   Plaintiff further alleges that Defendant intentionally accessed Plaintiff's

and Class Members' protected computers to obtain private and sensitive information, including but not limited to geolocation data, search histories, keystrokes, communications, and page viewing activities, without authorization or consent, in violation of 18 U.S.C. § 1030(a)(2).

159.    As a direct and proximate result of Defendant's unauthorized access, Plaintiff and Class Members suffered loss and damage, including the invasion of their privacy and the unauthorized use of their personal information. Plaintiff alleges that Defendant's violations of the CFAA entitle her to recover compensatory damages and injunctive relief under 18 U.S.C. § 1030(g).

160.    The statute provides that any person suffering damage or loss due to a violation may maintain a civil action to obtain compensatory damages, injunctive relief, or other equitable relief.

161.    Plaintiff alleges that Defendant's actions caused "loss" as defined by 18 U.S.C. § 1030(e)(11), which includes the impairment of the integrity and availability of data, programs, and systems on Plaintiff's and Class Members' protected computers.

162.    As a result of Defendant's conduct, Plaintiff and Class Members are entitled to recover damages in an amount to be proven at trial, including statutory damages for any damage or loss caused by Defendant's unauthorized access.

## SEVENTH CAUSE OF ACTION

### Violation of the Stored Communications Act 18 U.S.C. § 2701

163.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the proposed Nationwide Class.

164.    Plaintiff also alleges that Defendant violated the Stored Communications Act (SCA), 18 U.S.C. § 2701(a), by intentionally accessing Plaintiff's and Class Members' electronic communications stored on their devices without authorization.

165.    Defendant accessed and obtained stored electronic communications, including search history, messages, and other data, without proper consent.

166.     Plaintiff further alleges that Defendant exceeded any authorized access by using its spyware software from Google to access and disclose Plaintiff's and Class Members' stored electronic communications for commercial gain, in violation of 18 U.S.C. § 2701(a)(1) and (a)(2).

167.     As a result of Defendant's violations of the Stored Communications Act, Plaintiff and Class Members are entitled to statutory damages of no less than $1,000 per violation under 18 U.S.C. § 2707(c).

168.     Additionally, Plaintiff and Class Members are entitled to recover punitive damages under the SCA if it is established that Defendant acted with willful or intentional disregard for the privacy rights of Plaintiff and Class Members.

169.     Plaintiff seeks compensatory damages, statutory damages, punitive damages (as applicable), and injunctive relief for Defendant's violations of both the CFAA and the SCA, along with reasonable attorneys' fees and costs as provided under18 U.S.C. §§ 1030(g) and 2707(b), respectively.

## EIGHTH CAUSE OF ACTION

### Negligence

170.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the proposed Nationwide Class.

171.     Defendant's own negligent conduct created a foreseeable risk of harm to Plaintiff and Class members. Defendant's negligence included, but was not limited to, its failure to take the steps and opportunities to prevent the sharing of information with Google. Defendant's negligence also included its decision not to comply with industry standards, and/or best practices for the safekeeping and encrypted authorized disclosure of the Private Information of Plaintiff and Class members and its violation of Section 5 of the FTC Act.

172.     Defendant had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen,

misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining and testing its security protocols to ensure Private Information in Defendant's possession was adequately secured and protected, and that employees tasked with maintaining such information were adequately trained on relevant cybersecurity measures. Defendant also had a duty to put proper procedures in place to prevent the unauthorized dissemination of Plaintiff's and Class members' Private Information.

173.    As a condition of receiving services, Plaintiff and Class members were obligated to provide Defendant directly with their Private Information. As such, Plaintiff and the Class members entrusted their Private Information to Defendant with the understanding that Defendant would safeguard their information.

174.    Defendant was in a position to protect against the harm suffered by Plaintiff and Class members as a result of the Data Breach. However, Plaintiff and Class members had no ability to protect their Private Information in Defendant's possession.

175.    Defendant had full knowledge of the sensitivity of the Private Information, and the types of harm Plaintiffs and Class members could, would, and will suffer if the Private Information were wrongfully disclosed.

176.    Plaintiff and Class members were the foreseeable and probable victims of Defendant's negligent and inadequate security practices and procedures that led to the Data Breach. Defendant knew or should have known of the inherent risks in collecting and storing the highly valuable Private Information of Plaintiff and Class members, the critical importance of providing adequate security of that Private Information, the current cyber security risks being perpetrated, and that Defendant had inadequate employee training, monitoring and education and IT security protocols in place to secure the Private Information of Plaintiff and Class members.

177.    Defendant negligently, through its actions and/or omissions, and unlawfully breached its duty to Plaintiff and Class members by failing to exercise

reasonable care in protecting and safeguarding Plaintiff's and Class members' Private Information while the data was within Defendant's possession and/or control by failing to comply with and/or deviating from standard industry rules, regulations, and practices at the time of the Data Breach.

178.   The harm the Data Breach caused is the type of harm privacy laws were intended to guard against. And Plaintiff and Class members are within the class of persons privacy laws were intended to protect.

179.   Defendant negligently failed to comply with privacy laws by failing to protect against and prevent the dissemination of Plaintiff's and Class members' Private Information to unauthorized third parties.

180.   Defendant's violations of Section 5 of the FTC Act also constitute negligence. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

181.   Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class members' Private Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it acquired, obtained, and stored, and the foreseeable consequences of a data breach including, specifically, the damages that would result to Plaintiff and Class members.

182.   Plaintiff and Class members are within the class of persons the FTC Act was intended to protect.

183.   The harm the Data Breach caused, and continues to cause, is the type of harm the FTC Act was intended to guard against. The FTC pursues enforcement actions against businesses, which, as a result of their failure to employ reasonable data security

measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class members.

184.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class members by failing to have appropriate procedures in place to detect and prevent unauthorized dissemination of Plaintiff's and Class members' Private Information.

185.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately disclose to Plaintiff and Class members the existence and scope of the Data Breach.

186.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class members, Plaintiff's' and Class members' Private Information would not have been compromised.

187.    There is a temporal and close causal connection between Defendant's failure to implement security measures to protect the Private Information and the harm suffered, and/or risk of imminent harm suffered, by Plaintiff and Class members.

188.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered, and continue to suffer, injuries and damages arising from the Data Breach, including, but not limited to: damages from lost time and efforts to mitigate the actual and potential impact of the Data Breach on their lives, including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and various accounts for unauthorized activity, filing police reports, and damages from identity theft, which may take months—if not years—to discover, detect, and remedy.

189.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered, and will continue to suffer, the continued risks of exposure of their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails

to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

### NINTH CAUSE OF ACTION

**Violation of the California Customer Records Act ("CCRA")**

**Cal. Civ. Code § 1798.80, et seq.**

190.   Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the proposed California Subclass

191.   Section 1798.82 of the California Civil Code requires any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" to "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Under section 1798.82, the disclosure "shall be made in the most expedient time possible and without unreasonable delay."

192.   The CCRA further provides: "Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." (Cal. Civ. Code § 1798.82(b).)

193.   Any person or business required to issue a security breach notification under the CCRA shall meet the following requirements:

    a.   The security breach notification shall be written in plain language;

    b.   The security breach notification shall include, at a minimum, the following information:

        i.   The name and contact information of the reporting person or

business subject to this section;

   ii. A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

  iii. If the information is possible to determine at the time the notice is provided, then any of the following:

      1. The date of the breach;

      2. The estimated date of the breach; or

      3. The date range within which the breach occurred. The notification shall also include the date of the notice.

  iv. Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided;

   v. A general description of the breach incident, if that information is possible to determine at the time the notice is provided; and

  vi. The toll–free telephone numbers and addresses of the major reporting agencies if the breach exposed a Social Security number or a driver's license or California identification card number.

194.  The Data Breach described herein constituted a "breach of the security system" of Defendant.

195.  As alleged above, Defendant unreasonably delayed informing Plaintiff and Class members about the Data Breach, affecting their Private Information, after Defendant knew the Data Breach had occurred.

196.  Defendant failed to disclose to Plaintiff and Class members, without delay and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, Private Information when Defendant knew or reasonably believed such information had been compromised.

197.  Defendant's ongoing business interests gave Defendant incentive to conceal the Data Breach from the public to ensure continued revenue.

198.    Upon information and belief, no law enforcement agency instructed Defendant that timely notification to Plaintiff and Class members would impede its investigation.

199.    As a result of Defendant's violation of Cal. Civ. Code § 1798.82, Plaintiff and Class members were deprived of prompt notice of the Data Breach, and were thus prevented from taking appropriate protective measures, such as securing identity theft protection or requesting a credit freeze. These measures could have prevented some of the damages suffered by Plaintiff and Class members because their stolen information would have had less value to identity thieves.

200.    As a result of Defendant's violation of Cal. Civ. Code § 1798.82, Plaintiffs and Class members suffered incrementally increased damages separate

201.    distinct from those simply caused by the Data Breach itself.

202.    Plaintiff and Class members seek all remedies available under Cal. Civ. Code § 1798.84, including, but not limited to the damages suffered by Plaintiff and Class members as alleged above and equitable relief.

## TENTH CAUSE OF ACTION

### Violation of California's Confidentiality of Medical Information Act ("CMIA")
### (Cal. Civ. Code § 56, et seq.)

203.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the proposed California Subclass.

204.    Defendant is a "provider of healthcare," as defined in Cal. Civ. Code § 56.06 and/or a "contractor," and is therefore subject to the requirements of the CMIA, Cal. Civ. Code §§ 56.10(a), (d) and (e), 56.36(b), 56.101(a) and (b).

205.    Plaintiff and the Class are "patients," as defined in the CMIA, Cal. Civ. Code § 56.05(m) ("'Patient' means a natural person, whether or not still living, who received health care services from a provider of healthcare and to whom medical information pertains.").

206.   Defendant disclosed "medical information," as defined in the CMIA, Cal. Civ. Code § 56.05(j), to unauthorized persons without first obtaining consent, in violation of Cal. Civ. Code § 56.10(a). The disclosure of information to unauthorized individuals in the Data Breach resulted from the inactions of Defendant, including its failure to adequately implement sufficient data security measures and protocols to protect Plaintiff's and Class members' personal and medical information, which allowed unauthorized individuals to obtain Plaintiff's and the Class members' medical information.

207.   Defendant's negligence resulted       in      the      release       of individually identifiable medical information pertaining to Plaintiff and the Class to unauthorized persons and the breach of the confidentiality of that information. Defendant's negligent failure to maintain, preserve, store, abandon, destroy, and/or dispose of Plaintiff's and Class members' medical information in a manner that preserved the confidentiality of the information contained therein, was in violation of Cal. Civ. Code §§ 56.06 and 56.101(a).

208.   Defendant's systems and protocols did not protect and preserve the integrity of electronic medical information in violation of Cal. Civ. Code §56.101(b)(1)(A).

209.   Plaintiff and the Class were injured and have suffered damages, as described above, from Defendant's illegal disclosure and negligent release of their medical information in violation of Cal. Civ. Code §§ 56.10 and 56.101 and therefore seek relief under Civ. Code §§ 56.35 and 56.36, including actual damages, nominal statutory damages of $1,000, punitive damages of $3,000, injunctive relief, and attorneys' fees, expenses and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a) For a determination that this action is a proper class action;

b) For an order certifying the Classes, naming Plaintiff as representative of the Classes, and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

c) For an order declaring that Defendant's conduct violates the statutes referenced herein;

d) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

e) An award of damages including statutory damages to the extent available;

f) For punitive damages, as warranted, in an amount to be determined at trial;

g) For prejudgment interest on all amounts awarded;

h) For injunctive relief as pleaded or as the Court may deem proper; and

i)  For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

Dated:        April 11, 2025                    **KRISTENSEN LAW GROUP & EKSM, LLP**

*/s/ John P. Kristensen*

John P. Kristensen
Leigh S. Montgomery*
***Attorneys for Plaintiff and the Putative Class***

*(pro hac vice* forthcoming)

1

## **DEMAND FOR JURY TRIAL**

2   Plaintiff hereby demands a jury trial as to the entire action and all Claims for

3 relief.

4

5

6 Dated:   April 11, 2025    **KRISTENSEN LAW GROUP &**

7                 **EKSM, LLP**

8                 */s/ John P. Kristensen*

9                 John P. Kristensen

10               Leigh S. Montgomery*

11               Pro Hac Forthcoming

                 ***Attorneys for Plaintiffs***

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28